IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 11-cv-00675-RPM

HANSON COLORADO FARMS PARTNERSHIP,

    Plaintiff,
v.


THOMAS JAMES VILSACK, Secretary of the United States Department of Agriculture;
ROGER KLURFELD, Director of the National Appeals Division of the United States
Department of Agriculture;
FEDERAL CROP INSURANCE CORPORATION, a Corporation within the United States
Department of Agriculture, and
WILLIAM J. MURPHY, Administrator of the Risk Management Agency,

    Defendants.

---

ORDER ON PLAINTIFF'S FEE APPLICATION UNDER
THE EQUAL ACCESS TO JUSTICE ACT

---

Hanson Colorado Farms Partnership ("HCF" or "the plaintiff"), the named insured under a federal crop insurance policy, filed this action on March 17, 2011, seeking judicial review of the USDA National Appeals Division Director Review Determination dated February 2, 2011, which concluded that HCF did not have a bona fide insurable interest in the insured crop.

In a Memorandum Opinion and Order dated July 6, 2012, the Court vacated the USDA NAD Director Review Determination and ordered the Federal Crop Insurance Corporation ("FCIC") to indemnify the plaintiff pursuant to its Group Risk Income Protection ("GRIP") policy.

On August 6, 2012, the plaintiff filed an application for fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, seeking fees in the amount of $97,721.22. The defendants opposed the application.

Subsection (d)(1)(A), 28 U.S.C. § 2412 provides:

> (A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

A party seeking an award of fees and other expenses must "submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B). For purposes of subsection (d), "party" – with respect to a partnership – is defined as "any partnership ... the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed ...." 28 U.S.C. § 2412(d)(2)(B).

With its fee application, the plaintiff submitted two exhibits:

(1)     Exhibit 1, labeled "Net Worth Exhibit." The plaintiff's Net Worth Exhibit consists of a half-page declaration of Jeff Hanson, who states – as a partner of HCF – that on March 17, 2011, HCF had a net worth of less than $7,000,000 and fewer than 500 employees.

Mr. Hanson states that on that date the partnership had assets valued at $100,000 and liabilities of $3,900,000;

(2) Exhibit 2, a declaration of Jeff Todd, the plaintiff's lead counsel, with website information about Mr. Todd's law firm, McAfee & Taft (Exhibit 2-A) and attached billing statements (Exhibit 2-B).  Mr. Todd's declaration explains how the plaintiff's fee request was calculated.

The defendants argue the plaintiff's Net Worth Exhibit is not sufficient to show that the plaintiff is eligible to recover fees under the EAJA.

A party seeking to recover litigation expenses under the EAJA bears the burden of establishing that at the time the civil action was filed the applicant's net worth did not exceed the Act's net worth limitations.  *Shooting Star Ranch, LLC v. United States*, 230 F.3d 1176, 1177 (10th Cir. 2000); *see also Pate v. United States*, 982 F.2d 457, 459 (10th Cir. 1993) (discussing 26 U.S.C. § 7430, which incorporates EAJA requirements). A conclusory affidavit without supporting evidence is inadequate to establish eligibility under the EAJA. *Fields v. United States*, 29 Fed. Cl. 376, 382 (1993), *aff'd* 64 F.3d 676 (Fed. Cir. 1995); *see also Shooting Star Ranch*, 230 F.3d at 1178 (holding that an unsworn, unverified letter from the plaintiff's certified public accountant stating that plaintiff's net worth was between $1,500,000 and $1,800,000 was not sufficient to establish that the plaintiff qualified as a "party" under the EAJA).  An applicant requesting fees under the EAJA "must present sufficient evidence so that his or her net worth may be ascertained and verified by the court." *Fields*, 29 Fed. Cl. at 382; *but see United States v. 88.88 Acres of Land*, 907 F.2d 106, 108 (9th Cir. 1990) (observing that the standard of proof is not articulated in the statute and "some informality of proof is appropriate").

The plaintiff's statement of its net worth is not supported by any details or supporting documentation. The plaintiff did not provide a listing of specific assets or liabilities, tax returns, appraisals or other information from which the court could verify the plaintiff's assets and liabilities. The plaintiff's Net Worth Declaration is not sufficient.

The plaintiff's reply brief states, "... to the extent that this Court questions the veracity of their sworn affidavits, HCF will gladly submit any additional financial documents to satisfy such doubt. (Pls.' reply at 2).

To avoid prolonging this litigation and upon the assumption that plaintiff will be able to demonstrate eligibility by showing net worth not exceeding $7,000,000 by submitting a declaration of a qualified accountant who has examined the financial records, or an audited financial statement, the other issues raised by the defendants are addressed in this order.

The defendants argue that the Administrative Record shows the Government's position was substantially justified.

The Government's position is substantially justified under EAJA if it is "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). To meet the test of reasonableness, the Government must show "a reasonable basis for the facts asserted; a reasonable basis in law for the legal theory proposed; and support for the legal theory by the facts alleged." *Harris v. R.R. Retirement Bd.*, 990 F.2d 519, 520-21 (10th Cir. 1993)(citing *Gatson v. Bowen*, 854 F.2d 379, 380 (10th Cir. 1988)).

The dispute in this action was whether HCF had a bona fide insurable interest in the crop grown on the insured acreage. To be eligible for federal crop insurance, the insured must have a

"bona fide insurable interest in a crop as an owner-operator, landlord, tenant, or sharecropper." 7 U.S.C. § 1520(2). HCF was a tenant pursuant to a lease agreement with Colorado Farms, a related North Dakota partnership.

The Risk Management Agency ("RMA") rejected HCF's claim for indemnification by applying a provision of the agency's Loss Adjustment Manual Handbook which defined an "owner-operator, tenant, or sharecropper" as a person who:

    (a)    Produces the crop.

    (b)    Exercises managerial control relating to producing and marketing the crop (controls what to plant, when to plant, when to till, cultivate, irrigate, fertilize, spray, harvest, market, etc.).

    (c)    Makes credit arrangements.

    (d)    Owns farming equipment, makes arrangements to obtain equipment, or hires custom work.

(LAM Handbook, Part 2, ¶ 12A (AR 002476)). At the time of this dispute, the RMA interpreted this handbook provision to mean that a tenant such as HCF, claiming a 100% interest in an insured crop, must accomplish all four listed activities. The RMA determined that HCF had not done so. The RMA viewed Colorado Farms as the actual producer of the crop and the entity that bore the risk of its financial loss.

HCF disputed the RMA's rejection of its insurance claim, arguing that it had produced the crop through the services of a farm manager (Paul McGeary) and had made credit arrangements, as evidenced by a $1 million loan from Farm Credit Services to HCF and HCF's written agreement to repay Colorado Farms for all costs incurred by Colorado Farms for the 2008 corn crop of HCF. HCF disputed the RMA's interpretation of the handbook provision,

arguing that performance of any one of the listed activities demonstrated a bona fide insurable interest.

Although HCF's administrative appeals were unsuccessful, it prevailed in this action.

In opposition to the plaintiff's fee application, the defendants argue it was reasonable for the agency and the NAD to conclude that the HCF had not made credit arrangements because documentary evidence and witness testimony showed that HCF did not incur any debt until after the insurance attached (i.e., after the crop was planted), and because the terms of the guarantee agreement were vague. (Defs.' resp. at 5-6). The defendants also argue that it was reasonable for the agency and the NAD to conclude that HCF did not produce the crop or exercise managerial control over its production, based on the documentary evidence, witness statements and testimony regarding Colorado Farms' participation in the farming activities. (Defs.' resp. at 7). The defendants further assert that the RMA's interpretation of its handbook provision was a reasonable interpretation of the bona fide insurable interest requirement.

The defendants' arguments are not persuasive. This court has determined that RMA's interpretation of its handbook provision was illogical. (Memorandum Opinion and Order, at 13). And, as set forth in the Memorandum Opinion and Order, there was no factual basis for the defendants' position that HCF did not bear any financial risk for loss of the 2008 corn crop. (*Id.* at 19). The defendants' response brief does not explain why the chronology of HCF's credit arrangements is significant.

At most, there was a legitimate dispute about HCF's relationship with McGeary, a question significant to whether HCF produced or exercised managerial control over the

production of the crop. Even if the Government's position on that question was reasonable, its insistence that the plaintiff had no bona fide insurable interest was not.

The plaintiff seeks fees in the total amount of $92,721.22, calculated as follows:

| Name/position | Hours | Hourly Rate | Total |
|---|---|---|---|
| Jeff Todd (Lead counsel) | 8.5 | $225 | $1,912.50 |
| | 150.1 | $250 | $37,525.00 |
| | 16.3 | $260 | $4,238.00 |
| | 26.5 | $275 | $7,287.50 |
| Jeremiah L. Buettner (attorney) | 4.4 | $160 | $704.00 |
| | 47.4 | $185 | $8,769.00 |
| | 17.7 | $195 | $3,451.50 |
| | 22.7 | $200 | $4,540.00 |
| Spencer Smith (attorney) | 2.3 | $184.23 | $423.73 |
| Jared Boyer (attorney) | 10.4 | $75 | $780.00 |
| | 108.3 | $150 | $16,245.00 |
| David Seserman (local counsel) | 10.4 | $184.23 | $1,915.99 |
| Ginger Schones (paralegal) | 54.1 | $90 | $4,869.00 |
| Joan Hunsperger (paralegal) | .4 | $75 | $30.00 |
| Tayna Schmidt (paralegal) | .4 | $75 | $30.00 |
| | | Total: | $92,721.22 |

The defendants argue that the requested fees are excessive because the plaintiff calculated the fees using hourly rates that exceed the statutory limit.

The EAJA provides, "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii).

The plaintiff states that a cost of living adjustment (COLA) results in an hourly rate of $184.23. (Pls.' mot. at 5-6). The defendants' response does not dispute the plaintiffs' COLA adjustment. Thus, it may be assumed that $184.23 is an appropriate hourly rate under the EAJA.

The plaintiff asserts that enhanced rates are appropriate for Mr. Todd and Mr. Buettner due to their special expertise in federal crop insurance litigation. (*See* Ex. 2, Declaration of Jeff Todd). The defendants disagree, arguing that expertise in federal crop insurance law does not justify rate enhancement. The defendants also contend that if some rate enhancement is justified, the rate increase requested by the plaintiff is excessive.

In *Pierce v. Underwood*, the United States Supreme Court addressed the "special factor" exception, stating:

> the exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. *Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language*. Where such qualifications are necessary and can be obtained only at rates in excess of the [statutory] cap, reimbursement above that limit is allowed.

487 U.S. at 572 (emphasis added).

There is no guiding precedent for recognizing representation of farmers in federal crop insurance claims as a specialized practice area warranting a rate enhancement under the EAJA. The Supreme Court identified patent law as an example of attorneys having some "distinctive knowledge or specialized skill needful for the litigation in question" in the *Pierce* opinion. In this litigation, attorneys Todd and Buettner demonstrated their special competence in understanding farming practices as well as the complexities of the Federal Crop Insurance Act,

the operation of the Federal Crop Insurance Corporation, the Risk Management Agency, the Group Risk Income Protection policy and the factual context in which this dispute arose. Understanding the farm programs administered by the Secretary of Agriculture is a necessary requirement for conducting litigation of this type. Compared with the fees being paid by defendants in other fee transfer litigation before this court the enhancement requested by these two attorneys is reasonable and the government should be required to pay them.

Accordingly, it is

ORDERED that on or before October 19, 2012, the plaintiff shall submit a revised net worth exhibit, and it is

FURTHER ORDERED that upon the plaintiff's establishment of its eligibility under the Equal Access to Justice Act, the plaintiff's fee application will be granted.

Dated:   September 21, 2012

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge